# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON SPEARS, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-5749 |
| | : | |
| PASQUALE LEPORACE, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Stengel, J.                                                                                                                           February 21, 2011

Before the Court is a motion for summary judgment filed by the defendants in this action, Pasquale Leporace and the City of Reading. The plaintiff, Jason Spears, asserts claims under Section 1983 for violations of the Fourth Amendment. For the reasons set forth below, I will grant defendants' motion for summary judgment.

**I.  BACKGROUND**

Mr. Spears filed his Section 1983 complaint *pro se*, alleging that Pasquale Leporace, a police officer, unlawfully searched him in violation of the Fourth Amendment. He contends the City of Reading[1] is subject to supervisory liability. The facts giving rise to Mr. Spears's complaint are as follows: on February 23, 2008, numerous City of Reading police officers entered the Travelers Bar at 1701 Cotton Street in Reading. Among them was Criminal Investigator Leporace. Mr. Spears claims that Leporace knew him from previous encounters and that, when Leporace saw him, "he came right over to me and started searching me, 'claiming'

---

[1] Mr. Spears initially named the Reading Police Department as the second defendant in this action. This Court subsequently granted Mr. Spears's motion to amend the caption of his complaint to replace the Reading Police Department with the City of Reading as a defendant.

that I had a gun, even though I told him that I had no gun and I continually told him that he couldn't search me[.]" Complaint, 4. Mr. Spears's complaint contains no further description of the events leading to the search.[2]

Leporace memorialized the encounter in a police report filed two days after the incident, and later testified about it during a suppression hearing in the Berks County Court of Common Pleas. He arrived at the bar that day to investigate complaints about drug sales. Leporace Report, Def.'s Ex. A ("Report") at 4. Travelers Bar is located in a high-crime area of Reading known for violence and drug activity. Leporace Affidavit, Def.'s Ex. C, ¶ 2. The bar has been the subject of prior complaints about drug activity. Id. at 3. When Leporace walked inside, he

---

[2] Mr. Spears did not file a separate concise statement of material facts and instead, states two objections to the concise statement filed by the defendants in support of their motion.
    First, Mr. Spears objects to the defendants' characterization of the area where Travelers is located, stating that there is nothing in the record to support Mr. Leporace's assertion that it is in a "high-crime" area. Because affidavits are specifically recognized as relevant evidentiary materials for purposes of deciding summary judgment, it is proper for this Court to accept any assertion in Mr. Leporace's affidavit as evidence of record. See FED. R. CIV. P. 56(c). A *pro se* litigant's pleadings are to be construed liberally, and this includes treating assertions made in such pleadings as affidavits for purposes of summary judgment. See Reese v. Sparks, 760 F.2d 64, 67 n.3 (3d Cir. 1985). However, Mr. Spears nowhere disputes that the area of 17th and Cotton Streets is a high crime area. Rather, he claims that it "is on the outer end of the city and not inner city and is actually considered suburban." Pl.'s Resp. To Def.'s Mot. For Summary J., 2. Because Mr. Spears does not dispute that the area of 17th and Cotton Streets is a high crime area and simply asserts that it is suburban and not urban, I will treat Mr. Leporace's assertion on this point as undisputed fact.
    Second, Spears argues that the defendants have erred in referring to and including, as Exhibit E to their motion for summary judgment, a newspaper article about charges stemming from Mr. Spears's arrest in April of 2009. Defendants do not contend that this arrest was in any way related to his arrest on February 23, 2008. Mr. Spears is correct that his behavior subsequent to this incident is irrelevant in determining whether defendants are entitled to summary judgment in their favor in this action. Pursuant to Federal Rule of Civil Procedure 12(f), a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter . . . on its own[.]" FED. R. CIV. P. 12(f). Therefore, Exhibit E to defendants' motion for summary judgment is stricken from the record.

saw Spears sitting at the bar. Id. Spears looked towards the officers entering the bar, adjusted an item in his waistband, and then placed his left hand in his left jacket pocket. Id.; Tr. Supp. Hr'g, June 10, 2008 ("Tr.") 9:3-12; 11:14-16. Spears was wearing a thick winter jacket even though it was warm inside the bar. Report, 4; Tr., 11:21-25. Leporace approached Spears and asked him if he had a gun. Report, 4. Spears became nervous and alluded to previous encounters with Leporace, saying, "You stopped me before . . . but I'm good now." Id. Leporace told Spears that he was going to conduct a pat down for a gun. Id. In conducting the pat down, Leporace found three cellular phones in Spears's pocket. Id. According to Leporace, he then asked Spears if he could conduct a search, and Spears answered, "sure." Id. As Spears stood up, he removed his jacket and placed it next to him. Id. Another officer, Sergeant Kloc, began to search the jacket. Id. He stopped when he heard Spears mumble something, and then asked Spears if he could resume the search of the jacket. Id. Spears consented, Kloc resumed the search, and Kloc found a handgun with obliterated serial numbers in a pocket of the jacket. Id. at 5.

In his affidavit, Leporace asserts that he made the decision to conduct a pat down search of Mr. Spears based on a number of factors. He explains that he reported to the bar based on a complaint of drug trafficking, that individuals engaged in drug trafficking often carry numerous cell phones, and that guns are often present when drug transactions are made. He also stated that, based on this knowledge and on his observations of Mr. Spears's conduct, including his adjustment of his waistband and nervous demeanor, he believed Spears was armed. Leporace Affidavit, ¶¶ 4-7.

The officers arrested Mr. Spears and he was subsequently charged with being a felon in possession of a firearm, carrying a concealed weapon without a license, and possession of a

firearm with an obliterated serial number. Def.'s St. Undisputed Facts, ¶ 39. However, following a suppression hearing, the Court of Common Pleas of Berks County suppressed the physical evidence obtained during the search and the statements later made by Mr. Spears. See Commonwealth of Pennsylvania v. Jason Spears, No. 1228 MDA 2008 (Super. Ct. Mar. 12, 2009). The Commonwealth appealed the decision and the Superior Court affirmed the lower court's suppression order. Id.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c). Summary judgment is

therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992).

## III. DISCUSSION

Mr. Spears filed this action under 42 U.S.C. § 1983, alleging that Leporace violated his Fourth Amendment right to be free from unlawful search and seizure. He also includes a derivative Monell claim, arguing that the City of Reading is liable for Leporace's conduct. Leporace and the City of Reading have filed a motion for summary judgment seeking dismissal of Spears's complaint. They argue (1) that Leporace had reasonable suspicion to conduct a pat down of Spears; (2) alternatively, that Leporace had Spears's consent to conduct the pat down; (3) that Leporace is entitled to qualified immunity; and (4) that Spears has not produced sufficient evidence in support of his Monell claim against the City.

### A. Section 1983 Claim Against Leporace
#### 1. Fourth Amendment Standard

Section 1983 provides a civil remedy for the violation of rights created by federal law. See 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must demonstrate a violation of a federal or constitutional right by a person acting under color of state law. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997) (citing Baker v. McCollan, 443 U.S. 137,

144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The Fourth Amendment protects individuals against "unreasonable searches and seizures" of their person. U.S. CONST. amend IV. "A pat down is unquestionably a search covered by the Fourth Amendment" and is therefore judged under a reasonableness standard. Leveto v. Lapina, 258 F.3d 156, 163 (3d Cir. 2001). Under this standard, an officer may conduct "a reasonable search for weapons for the protection of the . . . officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Courts are to consider two factors in determining whether a Terry stop was constitutional. First, the officer must have "reasonable suspicion," meaning he is able to justify the stop by pointing to specific and articulable facts, which, taken together with rational inferences from those facts, warrant the stop. Id. at 21, 88 S.Ct. 1868. Reasonable suspicion is measured by the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Courts must then examine "'whether the officer's action . . . was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L. Ed. 2d 605 (1985) (quoting Terry, 392 U.S. at 20). "[W]hen police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo' " during the course of the stop. United States v. Edwards, 53 F.3d 616, 619 (3d Cir.1995) (quoting United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)).

2. **Qualified Immunity**

Qualified immunity is "an entitlement not to stand trial or face the other burdens of

litigation." Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L. Ed. 2d 411 (1985)). Traditionally, courts have employed a two step inquiry to determine whether this entitlement renders an official immune from suit. Under the first prong of the traditional inquiry, courts examine whether, taken in the light most favorable to the party asserting the injury, the facts show that the official's conduct violated the plaintiff's constitutional rights. Id. Second, courts must address whether the right violated was clearly established. Id. The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (quoting Saucier, 533 U.S. at 202, 121 S.Ct. 2151). This will in turn depend on the "specific context of the case." Id. "Therefore, to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Id. (internal citations omitted). Qualified immunity is applicable even where officials "of reasonable competence could disagree" that such acts were objectively reasonable. See Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

The Supreme Court recently ruled that the rigid two-step inquiry set forth in Saucier is no longer mandatory in all cases. See Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 813, 172

L.Ed.2d 565 (2009) (holding that officers who conducted a warrantless search of a home were entitled to qualified immunity under the second prong of Saucier, because it was reasonable for them to believe that their conduct complied with the law). It observed that the first prong of Saucier, requiring courts to determine initially whether a constitutional violation has occurred, is intended to "further the development of constitutional precedent." Id. at 818. But it noted that in some instances, where the underlying constitutional question "is so fact-bound that the decision provides little guidance for future cases" or is inadequately briefed, a court may find it inconvenient or unnecessary to reach it. Id. at 819-820 (citing, *inter alia*, Buchanan v. Maine, 469 F.3d 158, 168 (1st Cir. 2006) ("We do not think the law elaboration purpose will be well served here, where the Fourth Amendment inquiry involves a reasonableness question which is highly idiosyncratic and heavily dependent on the facts.")). It held, therefore, that a court may proceed to the second prong of Saucier without addressing the first, where "a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." Id. at 820.

       3**.**  **Leporace Did Not Violate a Clearly Established Constitutional Right**

In this case, it is in the interest of judicial economy to forgo the first prong of Saucier and consider instead whether, in light of the state of the law at the time of the alleged violation and the circumstances facing him, Investigator Leporace could reasonably have believed his conduct was lawful. At the time Leporace stopped Spears and patted him down, the law was clear that the standard for an officer conducting a stop "is one of reasonableness given the totality of the circumstances, which can include [the suspect's] location, a history of crime in the area, [the

suspect's] nervous behavior and evasiveness, and [the officer's] 'commonsense judgments and inferences about human behavior.'" Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003) (citing Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). It was also clear that police act reasonably in stopping a person "whose acts, when viewed in isolation, were entirely legal, but when taken in combination with other circumstances gave rise to a reasonable suspicion of criminal activity." Id.

Investigator Leporace stated in his police report, at a suppression hearing, and in his affidavit that the area in which Travelers Bar is located is a high crime area, that he went to the bar to investigate a report of drug trafficking, that he saw Spears reach for his pocket and adjust his waistband, that Spears was wearing a heavy coat inside a warm bar, and that Spears appeared nervous. Mr. Spears does not actually contest any of these facts.[3] Rather, he claims that, even viewing these facts together, Leporace did not have reasonable suspicion to believe that Spears was engaged in criminal activity. See Pl.'s Resp. To Def.'s Mot., 7. Leporace explained that he decided to conduct a pat down of Spears because his observations gave him reason to believe that Spears could be involved in the sale of drugs and could therefore have a weapon. Upon discovering three cell phones in Spears's pocket, that suspicion was confirmed, as Leporace

---

[3] As set forth in Note 2, Spears does not actually dispute that Travelers Bar is located in a high crime area; rather, he claims that it is not in the center part of Reading and is instead "suburban." There is no requirement that a location be urban for it to be properly characterized as "high crime."

Spears's complaint asserts that Leporace came over to him upon entering the bar. Spears does not dispute that Leporace made the observations he says he did, nor does he deny reaching into his pocket, adjusting his waistband, or appearing nervous.

Spears also does not dispute that police responded to the bar to investigate complaints of drug trafficking. Rather, he claims that such a call, on its own, does not create reasonable suspicion. Because the defendants do not argue that the call was sufficient in and of itself to create reasonable suspicion, I will not address Spears's argument on this point.

knew that people involved in drug sales often carry multiple cell phones. Because, in his experience, guns and drug sales often go hand-in-hand, he continued to believe that Spears could have a weapon. He therefore conducted a more extensive search for a weapon. The law at the time of this incident allowed Leporace to conduct a pat down based on articulable facts giving him reasonable suspicion, and also allowed him to take necessary steps to protect his safety during the remainder of the stop. See Johnson, 332 F.3d at 207 (affirming that a stop is proper where it is "based on an officer's observation of entirely legal acts" when those acts "viewed through the lens of a police officer's experience and combined with other circumstances, led to an articulable belief that a crime was about to be committed."); Hensley, 469 U.S. at 683-84 (finding that officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop."). Therefore, defendants have demonstrated that there is no genuine dispute that a reasonable officer in Leporace's position would have believed his conduct was lawful. Qualified immunity "gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law.'" Gilles, 427 F.3d at 203. Mr. Spears has failed to assert any facts from which a jury could conclude that Leporace acted incompetently or knowingly violated the law.[4]

---

[4] Defendants argue in the alternative that Leporace obtained Mr. Spears's consent to conduct the pat down and subsequent search of Spears's jacket. On this issue there is a genuine dispute of fact, as Leporace claims he obtained valid consent from Spears, see Def.'s St. Undisputed Fact, ¶ 30, while Spears claims he was coerced and tricked into consenting to the search, see Pl.'s Resp. To Def.'s Mot. For Summary J., 9-12. Although there is a dispute over this fact, it is not one which affects the outcome of this case. Officer Leporce is entitled to qualified immunity on the ground that a reasonable officer in his position would have believed he was acting lawfully in conducting the pat-down and search of the jacket *without* Spears's consent.

B.       <u>Monell</u> Claim Against the City of Reading

Defendants also seek summary judgment in their favor on Spears's claim against the City, arguing that, because Spears failed to show that his rights were violated, he has failed to establish a <u>Monell</u> claim.

Municipalities and other government bodies may be sued under Section 1983 for constitutional rights violations. <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability is imposed only when the government, "under color of some official policy, 'causes' an employee to violate another's constitutional rights." <u>Id.</u> The plaintiff must establish: (1) the municipality had a policy[5] or custom[6] that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. <u>Bd. of the County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citing, *inter alia*, <u>Monell</u>, 436 U.S. at 690–91, 694). In

---

[5] A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers." <u>Monell</u>, 436 U.S. at 690; <u>see also</u> <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.") (citation omitted).

[6] The absence of a policy does not thereby relieve a municipality of liability. <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 851 (3d Cir. 1990). A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law." <u>Bryan County</u>, 520 U.S. at 404; <u>see also</u> <u>Bielevicz</u>, 915 F.2d at 851 (stating that a constitutionally deficient custom may be found to exist when "policymakers were aware of [similar] unlawful conduct in the past, but failed to take precautions against future violations"). However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

other words, liability may not be imposed solely on a *respondeat superior* theory.  Monell, 436 U.S. at 692.  The plaintiff must demonstrate that the municipality, through one of its policymakers, affirmatively proclaimed the policy (or acquiesced in the widespread custom) that caused the violation.  See Watson v. Abington Twp., 478 F.3d 144, 155–56 (3d Cir. 2007).  Where the alleged custom is not itself unconstitutional, the plaintiff bears a comparably heavier burden of establishing municipal fault and causation by more than proof of a single incident.  Tuttle, 471 U.S. at 823–24.

Mr. Spears presents a Monell claim premised on the actions of Sergeant Kloc.  He argues that Kloc was acting as Leporace's supervisor, and that Kloc's presence at and participation in Leporace's search of Spears makes the City liable for Leporace's allegedly unconstitutional conduct.  Even assuming that Spears is correct and Leporace did violate the Fourth Amendment when he patted down and searched Spears, Spears has failed to allege or to present evidence that there was a policy or custom of conducting pat downs without reasonable suspicion or that such a policy or custom was the moving force behind Leporace's supposed violation of Spears's rights.  Because his only evidence that the City is at fault consists of a single incident, he faces a higher burden to proceed on his municipal liability claim.  By presenting no evidence to support it, Spears has simply failed to meet his burden.

## IV. CONCLUSION

For the reasons set forth above, I will grant defendants' motion and enter judgment in their favor.  An appropriate order is attached.